## BOOMER v. STONE ET AL.

1. ABSOLUTE DEED: MORTGAGE. Where the one party to an instrument claimed it to be a deed, and the other a mortgage, facts considered which determined its character.

2. ———: HUSBAND AND WIFE. When the wife may be bound by a conveyance of her real estate by the husband.

*Appeal from the Jones District Court.*

WEDNESDAY, APRIL 22.

ACTION in equity for the quieting of title to the south half of the northeast quarter of section seven, township eighty-eight, range four. The defendants allege that the conveyance to plaintiff was intended merely as a security for money loaned, and in their cross-bill ask that they may be allowed to redeem.

The undisputed facts are as follows: D. S. G. Cabell held the title to the northeast quarter of said section seven, and F. B. Doolittle was his agent for the payment of taxes. He allowed the taxes to become delinquent, and at the tax sale bid the lands off in the name of his wife, Annie Doolittle, to whom a treasurer's deed was executed in October, 1865.

In June, 1866, Annie Doolittle and her husband quit-claimed their interest in said quarter section to John Doud, jr., agent of Cabell, for the purpose of re-investing Cable with the interest disposed of at the tax sale. On the 6th of July, 1866, Cabell sold said quarter section to the defendant, C. D. Stone, for $1,600, $1,000 paid down, and $600 evidenced by a note to be paid in two years, and executed to him a bond for a deed therefor. On the same day Doud quit-claimed the interest derived under the tax sale to C. D. Stone.

On the 5th day of September, 1866, the defendant, C. D. Stone, without any valuable consideration, quit-claimed his interest in said quarter-section to his wife, M. D. Stone, and she and her husband mortgaged the same to her father, Van Antwerp, to secure a claim which he held against her husband. On the 9th day of November, 1866, Cabell deeded the quarter section in question to Doud, and transferred to him Stone's note of $600.

On the 11th day of December, 1866, the bond from Cabell to Stone was delivered up to Doud, and the plaintiff caused to be paid to Doud $600, the balance of the consideration money, in consideration whereof Doud afterward, to-wit: on the 5th day of February, executed, and on the 8th day of February, 1867, caused to be delivered to plaintiff a deed for the south half of the quarter section above named, and to the defendant, Mary D. Stone, a deed for the north half thereof. The plaintiff afterward paid to Stone the further sum of $250.

On the 2d day of November, 1868, the defendants, Mary D. and C. D. Stone, deeded the land in controversy to their brother-in law, George S. Bidwell. The real point in controversy is respecting the contract under which the plaintiff advanced the unpaid purchase money, paid the further sum of $250, and acquired a deed from Doud for the land in dispute.

Plaintiff contends that he purchased the land in controversy from the defendants, C. D. & Mary D. Stone; that he paid them $850 therefor, and that he was to have a deed absolute from Doud, and a quit-claim of the equitable interest of Mary Stone and husband.

Whilst the defendants claim that plaintiff merely loaned to defendant, C. D. Stone, the sum of $850, and that the conveyance was a mere security for its re-payment; and that it was understood that Doud should convey all of the land to Mary D. Stone, and that she should convey the south half thereof, the tract in controversy to plaintiff for security, with the privilege of redeeming within two years.

The court found that the deed to the plaintiff was in the nature of a mortgage, and declared the title to be in defendants upon the condition of their paying to plaintiff the sum of $1,400. Plaintiff appeals.

*A. E. House*, for appellant.

*Peters & Heath*, for appellees.

DAY, J.—The case is triable here *de novo*. The evidence is quite voluminous, in connection with the pleadings, one hundred and twelve closely printed pages. A review of it all so as to show the respective bearing of each portion upon the case, would extend the opinion to undue length, and even then the decision would be of no practical worth, beyond the settling of this controversy.

We have given to the whole testimony a careful reading, and it forces upon our minds the conviction that the contract between plaintiff and the Stones was one of sale, and not a mere loan and security.

The original agreement was made between plaintiff and C. D. Stone, and, as appears from the testimony of both, when no one else was present. This testimony furnishes, therefore, of necessity, the only direct evidence of this contract.

The plaintiff testifies positively that he bought the land for $850.00, and was to have an absolute conveyance therefor. Defendant, C. D. Stone, testifies that plaintiff was to give $850; that he agreed to have his wife convey the land to plaintiff; that they expected an article for a conveyance back from him, and that he was to have the land back in two years by paying the $850 and price of the improvements, and that by the term improvements he meant fence only. The direct evidence being thus in conflict, the truth must be sought from the collateral circumstances, and there are many of them, in the evidence, which support the testimony of plaintiff, and none which materially conflict therewith. We name only a few: The contract, as stated by defendant, in a wonderful degree lacks distinctness and completeness. Defendant does not state that it was agreed they should have an article for a re-conveyance, but that they expected one. No stipulation was made as to interest, but defendant told plaintiff the use of the land would be equivalent to the interest, to which he made no reply.

Defendant was to have the land back by paying the $850, and the price of the improvements made. Nothing was said of the kind of improvements, but defendant understood fences only to be referred to. In short, the whole agreement, as stated by defendant, is so uncertain and indefinite, that we cannot suppose that a business man of reasonable prudence and caution would be willing to advance a considerable sum of money upon it.

Further, the evidence shows that plaintiff did not have money to lend; that he owed one Clark $500, which was due, and that he obtained an extension of time from Clark, with permission to use the $500 which he had put by for the purpose of paying him. It is not reasonable that he should do this to loan defendant $850 for no other consideration than the mere use of eighty acres of unimproved prairie.

Besides, the evidence shows clearly that the amount advanced was the full value of the land; that defendant a few months before paid $1,600 for the entire quarter section, and that he retained the better half of it.

In addition to this is the fact that Stone stated to numerous witnesses, in substance, that he could not keep all the land; that he was obliged to dispose of part; that it was better to sell part than lose all; and that he had sold the land in controversy to plaintiff.

These circumstances, and many others which might be named, lead our minds unhesitatingly to the conclusion that the transaction was a sale. And

we think from all the circumstances of the case, Mary D. Stone is bound by the contract made with her husband.

The conveyance to her from her husband was altogether without valuable consideration.

That she authorized her husband to make some disposition of it, her own testimony shows.

She recognized his agency respecting it; knew of an arrangement to dispose of it to plaintiff; talked with plaintiff respecting his purchase before all the consideration was paid; and recognized his right to a clear title, and subsequently expressed a doubt whether they could buy the land back for two prices.

This conduct is inconsistent with her present claim that she authorized her husband to convey to plaintiff only in the event that they should be allowed to redeem within two years.

The defendant, Bidwell, bought with full knowledge of the plaintiff's claim, and stands in no better position than the other defendants. Defendants do not claim title in virtue of the quit-claim from Doud of the tax title, and such claim could not be maintained.

From a careful review of the whole case, it seems to us the court erred in treating plaintiff's conveyance as a mortgage. Plaintiff should have a decree quieting his title, and directing a conveyance to him of whatever equitable interest the defendants may yet have in the premises.

REVERSED.